### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AMTRUST NORTH AMERICA, INC.,**<br>59 Maiden Lane, 43rd Floor<br>New York, NY 10038<br><br>AND<br><br>**WESCO INSURANCE COMPANY,**<br>59 Maiden Lane, 43rd Floor<br>New York, NY<br><br>    Plaintiffs,<br><br>v.<br><br>**ALEJANDRO FEDERICO GONZALEZ DAVILA**,<br>10 Priv. Cipres<br>66287 San Pedro Garza Garcia<br>Nuevo León, Mexico<br><br>    Defendant. | CASE NO. _____<br><br>JUDGE _____<br><br><br>**<u>COMPLAINT</u>**<br><br>(JURY DEMAND ENDORSED HEREON) |

AmTrust North America, Inc. ("AmTrust") and Wesco Insurance Company ("Wesco"), for their Complaint against Defendant Alejandro Federico Gonzalez Davila ("Defendant"), state as follows:

### <u>NATURE OF THE ACTION</u>

1. Plaintiffs AmTrust and Wesco (collectively "Plaintiffs") bring this action to recover damages caused to them by the fraudulent acts and various breaches of fiduciary duty by Alejandro Federico Gonzalez Davila, former President of Primero Seguro, S.A. de C.V. ("Primero"), an entity in which AmTrust and Wesco are the two shareholders.

### <u>PARTIES</u>

2. AmTrust is a leading specialty insurer with global reach and provides property and casualty insurance, specialty coverage, and risk management services. AmTrust is a corporation

organized under the laws of the State of Delaware with its principal place of business in New York, NY.

3.      Wesco is a property and casualty insurance carrier specializing in commercial lines such as workers' compensation, commercial auto, and general liability. Wesco also serves as an underwriter for insurance policies offered by AmTrust. Wesco is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, NY.

4.      Defendant is a Mexican national residing in Mexico.

### INTERESTED NON-PARTY

5.      Primero is an insurance company with its principal place of business at Avenida Constitución 2050, 35th Floor, Office W106, Torre Top Obispado Building, Col. Obispado, Monterrey, Nuevo León, Mexico 64060. Primero is incorporated in Mexico as a Sociedada Anonima de Capital Variable. AmTrust and Wesco are the sole shareholders of Primero.

### JURISDICTION AND VENUE

6.      Plaintiffs invoke diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of the State of New York and the Defendant is a citizen of Mexico and the subject matter of the controversy exceeds $75,000.00 exclusive of interest, attorney's fees, and costs.

7.      Venue is proper in this Court  pursuant to NY CPLR §302(3) because during the period of time relevant to this action, Defendant regularly conducted business in New York in his capacity as Primero's President and/or engaged in other persistent course of conduct in New York and because the harm alleged in this Complaint occurred in New York  where both AmTrust and Wesco have their principal places of business. Furthermore, venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b) because a

substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

8.      On July 1, 2015, Primero hired Defendant to serve as its President.

9.      In March 2025, Primero received whistleblower complaints alleging various forms of misconduct perpetrated by Defendant and launched an internal investigation into those allegations.

10.      Throughout the course and by the end of its internal investigation, Primero determined that Defendant had engaged in conduct detrimental to the company including manipulating the company's technical reserves in order to falsify the company's financial position, engaging in deliberate, high-level financial misconduct by concealing roughly $430 million pesos in hidden insurance claims, and altering or omitting accounting records to conceal the true nature of operations under his leadership.

### Manipulation of Technical Reserves

11.      Defendant's behavior constituted a general pattern of accounting manipulation from the beginning of the 2020 global pandemic until his termination in 2025.

12.      In multiple monthly and quarterly closings, when the claims rate was high and the actual financial results were inconvenient for Defendant, he ordered the artificial reduction of technical reserves.

13.      Through the Director of Finance and the Technical Director, Defendant instructed that pressure be put on company actuaries to "find a way" to reduce the calculated reserves, arguing without technical basis that the amounts determined "did not make sense" or were "too pessimistic."

14.    Additionally, Defendant intentionally obstructed the internal actuary office's access to all the information needed to accurately calculate and substantiate company reserves.

15.    This procedure of "understatements" implied releasing reserves previously constituted for claims, with the sole purpose of momentarily improving profits in the financial statements of each closing. In other words, the accounting results were made up, transferring part of the real losses to the future. This practice, apart from contravening accounting and regulatory principles in the insurance sector, meant that Plaintiffs, as shareholders of Primero, did not have a correct reading of the claims rate or profitability of Primero, preventing informed decisions from being made (for example, timely adjusting premiums or insurance conditions for profitable vs. unprofitable businesses).

16.    Primero and Plaintiffs verified this conduct through review of systemic records and witness accounts confirming that negative adjustments were made to the reserves month after month at Defendant's direction.

17.    Defendant's false reports coupled with his alterations and omissions to Primero bookkeeping entries concealed Primero's true financial condition under Defendant's leadership exposing Primero to potential criminal action from the Mexican government under the Federal Law for Insurance and Bond Companies.

### Fraudulent Concealment of Significant Insurance Claims

18.    During this same five-year window prior to this termination, Defendant also engaged in a pattern of deliberate and high-level financial misconduct, including the concealment of roughly $430 million pesos in hidden insurance claims related to a major company account.

19.    One of Primero's highest value accounts is the subscription of transportation insurance for a major international vehicle manufacturer.

20.    Through their investigation, Plaintiffs also discovered that Defendant manipulated the reporting of insurance claims. The insurance agent assigned to the account of the above international vehicle manufacturer reported that the client had a complicated administrative structure that caused delays in claims; however, Defendant made use of this complicated structure to conceal critical financial information.

21.    Throughout 2024, various members of Primero's staff repeatedly requested a report on unpaid claims from this insurance agent in order to calculate the corresponding technical reserves, evaluate the real profitability of that business, and consider rate adjustments on the account. However, Defendant delayed and hindered transparency in this matter in order to retain his position as President.

22.    In May 2024, in a meeting with the insurance agent, Primero finally obtained a printed list of pending claims (June 2022 to June 2023) for approximately $150 million pesos. When Defendant learned of this information, he ordered its disclosure silenced.

23.    At a weekly management meeting where one of his subordinates exposed the situation, Defendant abruptly interrupted him and, at the end of the meeting, summoned him privately to prohibit him from sharing that data in front of the company actuary or other managers.

24.    Defendant admitted that all those outstanding claims would drastically impact technical reserves and "affect the [company's] financial result."

25.    Instead of disclosing these claims as required by company policy, Defendant imposed a guideline of gradually covering up payments: claims were only paid as the "complete" information of each case was obtained, trickling out a few payments each month so that the apparent financial result of the company would not suffer a significant blow. He even instructed

increasing the premiums to recover some of the future losses, instead of reflecting the company's true financial situation. This practice continued and aggravated the problem.

26.     In the last week of September 2024, the insurance agent sent another list, now of pending claims from June 2023 to June 2024, which totaled approximately $280 million additional pesos. Despite the magnitude of these claims (between both periods, about $430 million pesos in obligations for claims not reflected in a timely manner), Defendant continued to mandate this policy of opacity. He instructed subordinates not to pass on relevant information to company actuaries and instead deliberately hide the information.

27.     Defendant's conduct was not only dishonest but also put at risk Primero's solvency and accounting veracity.

## COUNT ONE - FRAUD

28.     Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 27 as if fully restated herein.

29.     Through his actions, Defendant has engaged in fraudulent conduct detrimental to the Plaintiffs, shareholders of Primero.

30.     As alleged above, Defendant orchestrated a scheme by which he forced his subordinates to materially misstate Primero's financials to Plaintiffs in an effort to artificially reduce Primero's calculated reserves.

31.     Defendant also took affirmative steps to conceal $430 million pesos worth of insurance claims on a major Primero account again for the purpose of falsifying Primero's financial records made available to Plaintiffs.

32.     Defendant was fully aware of the material nature of the information that he forced subordinates to conceal and/or misstate regarding Primero.

33. Defendant knew that Plaintiffs would rely on Primero's financial information and Plaintiffs did in fact rely on that information in conducting their business with, and/or investment in, Primero.

34. Plaintiffs' reliance on information provided by Primero internal financial personnel at the direction of its President (the Plaintiff) was reasonable.

35. Defendant took these steps not to benefit Primero or its shareholders but to bolster his own position and continue receiving the benefit of his corporate salary, privileges, and bonuses despite the reality of his job performance meriting none of the above.

36. As a result of Defendant's fraudulent conduct, Plaintiffs have suffered significant damages which they will demonstrate at trial, including but not limited loss of investment and/or write-downs in excess of $30,000,000.00.

## COUNT TWO – BREACH OF FIDUCIARY DUTY

37. Plaintiffs incorporate the allegations set forth in Paragraphs 1-36 as if fully restated herein.

38. As the former President of Primero, Defendant owed fiduciary duties to Primero and its shareholders, Plaintiffs AmTrust and Wesco.

39. Defendant breached his fiduciary duties by fraudulently concealing relevant financial information from Plaintiffs (and non-party Primero) in order to artificially inflate company performance during his tenure and to receive salary and bonuses from the company disproportionate to the level warranted by his actual performance.

40. As a result of Defendant's breach of his fiduciary duties, Plaintiffs have suffered significant damages which they will demonstrate at trial, including but not limited loss of investment and/or write-downs in excess of $30,000,000.00.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, AmTrust North America, Inc. and Wesco Insurance Company request that the Court enter judgement in their favor and against Alejandro Federico Gonzalez Davila in an amount to be calculated at trial along with recovery of Plaintiffs' attorneys' fees, costs, and any other such relief as the Court deems appropriate.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

By:/s/ Alfons D'Auria
    Alfons D'Auria, Esq.
    1270 Avenue of the Americas, 24th Fl
    New York, NY 10020
    212.492.2500 (Office)
    212.492.2501 (Fax)
    alfons.dauria@ogletree.com

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

By:/s/ Komlavi Atsou
Komlavi Atsou (Ohio # 0084235) (Pro Hac Vice Application Forthcoming)
Key Tower, 127 Public Square, Suite 4100
Cleveland, OH  44114
216.241.6100 (Office)
216.357.4733 (Fax)
komlavi.atsou@ogletree.com

*Attorneys for Plaintiffs*